No. 3136

Second Circuit

BLAUSHILD v. ROCKHOLD, ET ALS.

(December 21, 1927. Opinion and Decree.)

(*Syllabus by the Editor*)

1. **Louisiana Digest—Obligations—Par. 86, 87, 100; Builders and Building—Par. 30.**

Where a suspensive condition is not expressed in the written instrument but is implied from the nature of the contract and the presumed intent of the parties, it should be interpreted as a contract with suspensive condition.

2. **Louisiana Digest—Obligations—Par. 90; Evidence—Par. 242.**

Parol proof may properly be admitted to show that a written instrument was delivered on a suspensive condition under Articles 2021, 2027, 2037 and 2043 of the Civil Code.

3. **Louisiana Digest—Obligations—Par. 97, 100.**

Under Civil Code, Article 2043, an obligation contracted on a suspensive condition cannot be executed until after the event.

4. **Louisiana Digest—Pleading—Par. 12, 14.**

Where fraud and a plea that defendants were only conditionally bound were both contained in defendant's answer, the pleader is entitled to have his plea considered and passed upon as a whole. If one plea fails, he may rely on the other.

5. **Louisiana Digest—Builders and Buildings—Par. 3, 10.**

Where, under the terms of the agreement between contractor and sub-contractor, the sub-contractor was to notify the architect and obtain his approval as soon as practicable after signing, the sub-contractor was not bound by the contract until approval of the architect was obtained.

Appeal from the Third Judicial District Court of Louisiana, Parish of Lincoln. Hon. S. D. Pearce, Judge.

Action by Sam Blaushild against S. J. Rockhold, et als.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

E. L. Walker, of Ruston, attorney.

Barksdale, Warren & McBride, of Ruston, attorneys for plaintiff, appellant.

William J. Hammon, of Jonesboro, attorney for defendant, appellee.

ODOM, J. The defendants are general contractors and, on December 14, 1926, entered into a contract with the Jackson Parish School Board to erect a public school building at Jonesboro in that parish according to plans and specifications made by J. W. Smith, architect, of Monroe, Louisiana.

They subsequently entered into a contract with the plaintiff, Blaushild, to furnish all material and install the heating and plumbing system in said school building at the stipulated price of $7700.00.

The contract between plaintiff and defendants is in writing and is attached to and made part of the petition. It provides that plaintiff shall

"furnish all material of every kind and nature whatsoever, and all labor, and to erect and install, and complete all of the heating and plumbing system to be erected and installed in the new brick school building now under construction by the general contractor by and under contract with Jackson Parish School Board, all in accordance with the drawing, plans and specifications of J. W. Smith, architect, of Monroe, Louisiana, a copy of which is now on file in the recorder's office of Jackson parish, Louisiana, and which copy is made a part hereof, * * *."

Alleging that defendants breached the contract and refused to permit him to do the work and that he would have made a net profit of $1700.00 if he had been allowed to do the work under the contract, he brought this suit against defendant for that amount.

Defendant, in answer, admitted the execution of the document alleged to be the contract between them and plaintiff but plead, in substance, that it was signed and delivered with the distinct agreement and understanding that it should have no effect and should not be binding on them unless and until approved by the architect, J. W. Smith; that under the specifications, made a part of the contract, no sub-contractors could be employed without the approval and sanction of the architect, all of which was within the knowledge of plaintiff who was familiar with said specifications; and defendants further alleged that plaintiff made false and fraudulent representations as to his standing as a contractor with said architect which induced them to sign the instrument.

The lower court rejected plaintiff's demands and he has appealed.

## OPINION

The substance of the defense is that the contract with plaintiff was only a conditional obligation or one entered into with a suspensive condition, to-wit: that J. W. Smith, the architect, would approve the contract; that the condition upon which the contract depended to make it valid and binding failed because the architect refused to approve it, and that therefore defendant is not bound.

We have no difficulty in reaching the conclusion that the contract was entered into with a suspensive condition, and while that condition is not expressed in the written instrument itself, it is implied from the nature of the contract and the presumed intent of the parties.

The parties to the contract well knew that the principal contractor could not sublet any of the work on the building to anyone who was not satisfactory to the architect.

Plaintiff was familiar with the general rule that the architect must approve all subcontracts. Besides this, the contract was entered into with special reference to the specifications, which were made a part of it.

These specifications provided in specific terms that the contractor should not employ any sub-contractor—
"that the architect may within a reasonable time object to as incompetent or unfit".

Blaushild was familiar with these specifications. He had a copy of them and said he had read them before the contract was signed. He knew that he could not do the work without the sanction of the architect and he knew that the contract entered into could not ripen into a valid and binding obligation except upon condition that the architect would approve it.

He was not only informed by the specifications but he knew from general custom and the nature of the contract that the approval of the architect was a condition precedent to his doing the work. His knowledge of that fact is doubly manifest by his conduct. After the document was signed he sought and obtained prices o: material and labor for installing the plant. After doing so he was informed by defendant that Smith, the architect, had notified defendant, the Parish School Board and the building committee, that he was not acceptable as a sub-contractor. He at once, it. seems, sought advice of counsel, who told him to see the architect. He went to Monroe and saw Smith and sought his approval; to no avail. In the meantime, as stated, he had obtained prices on material and labor to install the plant.

The material man on numerous occasions urged him to place the order for the material, which he refused to do notwithstanding he was told that the price of material fluctuated and that it was necessary that the order be placed so that the material man might order the goods out at the current price. His asserted reason for not doing so was that he did not need them at that time. We are not impressed by his testimony on that point. We think his conduct in consulting counsel as to his rights and his refusal to place the order for the material indicate that he had in mind all the while that he had no contract which he could enforce, it not having been approved by the architect, and we think his counsel was probably of the same opinion for he advised a consultation with Smith, the architect. If he had thought and his counsel had advised him that he had a binding contract he would have stood upon it without further ado.

In addition to this, S. J. Rockhold, one

of the defendants, testified that plaintiff went to see him at Jonesboro and sought the contract to install the plumbing and heating plant in the building and submitted a price, that he told Blaushild that Smith, the architect, would have to be consulted concerning all sub-contracts, and that the plaintiff then informed him that—

"he would be perfectly satisfactory to Mr. Smith and I told Mr. Blaushild that under those conditions, under the condition that he would see Mr. Smith and get his 'O.K.' on the contract, we would draw up the contract that day."

On page 59 of the testimony he said:

"My agreement with Mr. Blaushild was this, we were drawing the contract that day with the understanding that he would see Mr. Smith before it went on file and get his 'O.K.' on it and put it on record and go ahead with the work."

On being asked what was done at the time, and if he signed the contract, and whether the whole transaction took but a few minutes, he said:

"I did with the statement from Mr. Blaushild that he would see Mr. Smith immediately and get his 'O.K.' on the contract and then would have it recorded, and then it would be valid."

Sam Nomey, one of the defendants, testified that he was present when the document was signed and heard what was said and heard S. J. Rockhold tell Blaushild that if Smith failed to approve it, it would not be binding upon anybody, and that Blaushild said:

"If Smith don't 'O.K.' it, it will be all right, it won't be binding on either one."

Henry Rockhold, son and employee of defendant, S. J. Rockhold, testified that plaintiff appeared at Jonesboro, where the building was being erected, and asked to be allowed to bid on the heating and plumbing, that he was shown the plans and specifications and after about three hours submitted his bid, and that his father, S. J. Rockhold, told him that he could make no contract without the approval of the architect, and that plaintiff said that would be all right, that Smith would approve it as he had worked under Smith and that his work was satisfactory, that plaintiff was in a hurry to get the contract signed so that he could order his material.

Blaushild testified that the question of Smith's approval was brought up, but he denied that he agreed that the contract would have no binding effect without the architect's approval. However, the preponderance of the evidence shows that he did.

Henry Rockhold testified that when the contract was signed he notified Smith, the architect, and that Smith at once registered his objection upon the ground that plaintiff was incompetent, and that later plaintiff was notified of Smith's disapproval.

Smith, as a witness, said that he had refused to approve the contract, and that plaintiff was incompetent, and not acceptable to him.

Counsel for plaintiff objected to the introduction of parol evidence on the ground that such evidence is not admissible to alter, contradict or vary the terms of a written instrument.

That rule, so well established, is not applicable in this case. The testimony was not offered to vary or contradict the written contract, but to show a distinct contemporaneous collateral agreement between the parties at the time the instrument was signed that it should not be binding unless approved by the architect—in other words, to show that it was executed under a suspensive condition.

"It has become the settled rule in a majority of states that a written contract, whether under seal or not, may, by parol, be proved to have been delivered to the obligee upon a parol condition that it was not to become binding until the happening of a future event, and may be avoided upon the further proof that such event has not occurred. Accordingly it may be shown by parol evidence that a note, unconditional in terms, was conditionally delivered, and placed in the hands of the payee with the distinct understanding that it was not to be operative, or become a binding obligation, until the happening of some event."

10 R. C. L. 1055.

Also:

"Parol evidence is admissible to show that a writing, in the form of a contract, never became operative as a contract. In other words, a separate agreement, constituting a condition precedent to the attaching of any obligation under the writing, may be shown by parol evidence."

10 R. C. L., Section 249, page 1053.

See Section 244, page 1051, same volume. Whittaker et al. vs. Lane, 104 S. E. 252; 11 A. L. R. 1157.

In a note following the cited case in 11 A. L. R., at page 1174, it is stated:

"It is a view generally accepted that the rule which excludes parol evidence to modify a written contract does not, at least as regards contracts not under seal, prevent its introduction to show that a written instrument was delivered on condition."

We think the testimony was properly admitted for the purpose offered.

The defendants having agreed to employ plaintiff on condition that the architect would approve such employment and the architect having refused to approve the contract, defendants are not bound.

"Conditional obligations are such as are made to depend on an uncertain event. If the obligation is not to take effect until the event happen, it is a suspensive condition; * * *."

C. C. 2021.

"Suspensive conditions are either express or implied. * * *; they are implied, whenever they result from the operation of law, from the nature of the contract, or from the presumed intent of the parties."

C. C. 2027.

"Every condition must be performed in the manner that it is probable that the parties wished and intended that it should be."

C. C. 2037.

An obligation contracted on a suspensive condition cannot be executed until after the event.

C. C. 2043.

A policy of insurance containing a clause that it should not become binding on the company unless countersigned and approved by a certain agent is not binding if not countersigned.

Hardie vs. Insurance Co., 29 La. Ann. 242.

"A promise may be conditional, that is, the performance may be due, not immediately, but only after the lapse of time or the happening of a future event. In such cases as a rule the condition precedent must be exactly performed or fulfilled before the promise can be enforced."

9 Cyc. 615.

"A promise may be conditional upon the act or will of a third person. A frequent example of such promises occurs in the case of building contracts where the approval of the architect or some third person is required before payment is due."

9 Cyc. 617.

6 R. C. L. 692 (12).

Counsel for plaintiff insist that the de-

fense is based solely upon the allegation of fraud.

Defendants allege that plaintiff practiced fraud upon them in order to get the contract signed.

Plaintiff's counsel contend that fraud was not proved and that therefore the defense falls.

But defendants did not rest their case upon the allegation of fraud alone. The substance of the answer is that defendants were only conditionally bound, and that their liability was made to depend upon the approval of Smith, the architect, and that his approval was never obtained but specifically declined.

A pleader is entitled to have his plea considered and passed upon as a whole.

Davies vs. Bierce, 114 La. 663, 38 So. 488.

Counsel further contend that it was defendants' duty to notify the architect and get his consent before contracting with plaintiff, and that not having obtained such approval before the contract was signed they are bound.

The specifications, Article 36, provide that the contractor—

"as soon as practicable after the signature of the contract, shall notify the architect in writing of the names of sub-contractors proposed for the principal parts of the work and for such others as the architect may direct and shall not employ any that the architect may within a reasonable time object to as incompetent or unfit."

In this case, they did precisely what this specification says they should do. After reaching an agreement with plaintiff, they notified Smith. It was not "practicable" to notify the architect of a "proposed" subcontractor until after an agreement had been reached with such sub-contractor. Until such agreement with a sub-contractor, the acceptance of his bid, etc., there was nothing to submit. The article contemplates that an agreement should be reached between the contractor and the subcontractor and that the name of the subcontractor should be submitted to the architect. The fact that the agreement between plaintiff and defendants was reduced to writing previous to the submission of plaintiff's name to the architect, does not cut defendants off.

The written instrument is not the contract. A contract is an agreement by which one person obligates himself to another, etc. C. C. 1761; and—

"the contract must not be confounded with the instrument in writing by which it is witnessed."

C. C., 1762.

Counsel also complain that the architect was not promptly notified.

The testimony does not make it clear as to when defendant notified Smith that he proposed plaintiff as a sub-contractor, but we infer that there was some delay. But granting that there was a delay, that is not a matter which concerns plaintiff, for the reason that he was in no way injured by such delay. He did not execute the contract. He did not contract for labor and did not order any material. The cancellation of the contract left him precisely where he was before it was entered into. The only claim which he makes is for the profits he alleges he would have made had he been permitted to do the work.

In conclusion we may say that an enforcement of the contract would be wholly inequitable. It was through no fault of defendants that they did not live up to

the agreement with plaintiff. Due to the very nature of the situation it was impossible for them to carry out the agreement with plaintiff. It is conceded that without Smith's approval plaintiff could not do the work. The testimony shows that defendants lost from $800.00 to $1000.00 by virtue of having to get another sub-contractor. They reconvened for this amount, but neither the law nor the evidence supports their claim.

For the reasons assigned, the judgment is affirmed with costs.