No. 599

First Circuit

McCASKY REGISTER CO. v. SMITH

(May 6, 1930.   Opinion and Decree.)

Hiddleston Kenner, of Lacombe, attorney for plaintiff, appellant.

A. D. Schwartz, of Covington, attorney for defendant, appellee.

MOUTON, J.   Plaintiff company, through its salesman, H. W. Torlage, sold a cash register and a credit system, two distinct appliances, to defendant.

The cash register, including one dozen rolls at $2 for $282; and the credit system at $627.

The sum of $32 was paid cash on the cash register, leaving a balance on the contract of $250, for which defendant gave his note.

Fifty-two dollars was paid cash on the price of the credit system, and upon which a credit of $150 was allowed under the contract for an old system defendant had

in use, leaving a balance of $425 represented by a promissory note executed by defendant. Defendant subsequently paid an installment of $25 on the last-mentioned obligation, reducing it to a balance of $400. Plaintiff admits receiving $33.34 on account of the note of $250, leaving a balance thereon of $216, thus totaling on the two notes a balance of $616.66. He claims interest in the sum of $20 on the $400 note, and $12.50 on the other.

He is also asking $71 for surety salesbooks, and 500 special separate score cards he alleges to have sold defendant, May 5, 1927; also, $8.50 for a carriage A-27 cash system sold defendant; and $150 attorney's fees.

Defendant in his answer admits the execution of the two notes, but denies any liability thereunder. He admits that the surety salesbooks and score cards were shipped to him, but denies any liability therefor, avers that the carriage cash system was also shipped but without his consent or knowledge, and that it was never accepted by him. He denies that he is liable for the attorney's fees, but admits he paid $58.34 on the two notes, in cash, as by plaintiff alleged, but avers that $25 thereof was paid through misapprehension and error.

Further answering, he pleads that the contract signed April 27, 1927—which embodied the amount for the note of $425 after deducting the cash payment and the credit for the old system, to which we have hereinabove referred—was signed through error brought about and resulting from artifice on the part of the agents or officers of the plaintiff company. He then pleads payment in full of the note for $280, meaning the contract, upon which, as we have before stated, a payment of $32 in cash had been made. This contract really amounted to $282, including one dozen rolls to which we have heretofore referred, leaving a balance of $250, after deducting the $32 cash payment, and for which amount of $250 the note was executed.

He pleads that in the return of shipment of the goods and wares for which he disclaims liability he has incurred an expense of $50, which he has paid to minimize damages, and claims that amount in reconvention.

The district judge rejected plaintiff's demand, and likewise defendant's claim in reconvention.

Plaintiff appeals.

The main complaint of defendant, as appears from his testimony, is directed to the written contract in reference to his purchase of the credit system. He says it was understood with Torlage, the salesman for plaintiff, that he had the privilege of returning the machine, if, after trying it out, it was not satisfactory. It is clearly shown that the contract was placed on a desk in defendant's place of business where he signed it. His daughter and a clerk, Henry Smith, were near by at the time, and so was Torlage, the salesman. There is no proof whatsoever of any fraud, deceit, or artifice being practiced on defendant. His signature was voluntarily affixed to the contract, and there is no evidence upon which a plea of error could be grounded. The defendant says that he did not read the contract before signing it, but as there was no fraud, misrepresentation, or error appearing prior to or when it was executed, he cannot be relieved of his obligations thereunder because he signed it without reading the agreement. Franks vs. Davis Bros. Lumber Co., 146 La. 803, 84 So. 101.

The fact is that the contract had across its face in large, striking type and in cap-

ital letters the words, "CAUTION—NO GOODS SOLD ON TRIAL," and immediately following in smaller print an express agreement that the order was exclusive, and could not be altered by "any verbal agreement or understanding." It is impossible to believe that he signed this contract without having noticed the caution it carried so conspicuously that a defective eye could have seen it.

Although he was bound by the agreement, as we before stated, even if he did not read it, we will, however, consider the evidence relative to his contention that the salesman had given him the right to return the credit system if it did not suit him.

This salesman Torlage, unqualifiedly denies that he gave defendant any such optional right. Torlage says that when the contract was signed defendant asked him in case he was unable to use the system if he would not take it "off of his hands." Torlage answered that it would not be taken back by the company, but if defendant later on could not use it he would try to dispose of it for him, and which he did.

In connection with this statement by the salesman, a letter written by defendant to plaintiff company throws some light on the subject under discussion. In that letter, which is dated September 8, 1927, about four months after the contract was signed and the notes executed, defendant, after saying he is unable to use the machine, thus expresses himself: "Therefore would thank you to advise if you cannot transfer this machine to some one else." How well these words "transfer this machine to some one else" correspond with the promise Torlage says he personally made defendant when the contract was signed. Again in the letter defendant continues and says: "Of course we know that this depends upon a sale you are about or may soon make." That statement embodies almost precisely the relief Torlage had promised if defendant could not use the credit system. In concluding the letter defendant, after stating he was not able to use the machine, finally says: "But find that we cannot consistently do so in our business." These concluding words are not at all suggestive of any defect or trouble with the machine, and merely say that defendant could not "consistently" use it in his business.

If defendant had had, as he claims, an agreement that he could return the machine if not suitable, it is simply inconceivable that a letter couched in such terms would have been written plaintiff some four months after the execution of these contracts and promissory notes. This letter, as we have hereinabove intimated, has no reference to the purchase of the cash register.

The defense urged against the contract and note of $250 for the cash register is one of full payment or settlement. The proof is that defendant paid $32 on that purchase, and the plea of payment in full urged by defendant is therefore not sustained. The evidence shows that the contract for the register was signed at a hotel and not in the store of defendant. The fact remains, however, that the contract was signed with equal opportunity to defendant to read it, and that it was executed without fraud, error, or misrepresentation. Defendant is equally bound on this transaction and note as upon the other, not having settled it as urged in his pleadings.

It was shown that defendant sent a check for $139 to plaintiff with a notation that it was in full settlement of his whole debt, which was declined, and properly for the reasons hereinabove given and did not constitute a legal tender.

560

As to the claim for $71, we find that the goods were not serviceable as they should have been; and as to the carriage cash system, that it was returned to plaintiff. The amount claimed for these two items is denied. The notes stipulate attorney's fees at not less than 10 per cent of balance due when placed in the hands of an attorney for collection.

The amount due on the two notes, after making the proper deductions, totals the sum of $616.66.

The note of $425 was made payable in monthly installments divided into 17, and the other divided into 15 payable monthly also. A payment of $25 was made on the $425, leaving a balance of $400, and on the other, a payment of $33.34 for two installments, was received by plaintiff, leaving a balance of $216.66. Plaintiff is entitled to legal interest to the date of the institution of this suit amounting to $8.15 figured on the date the respective installments became due on the $400 note, and to $4.40 on the other note, calculated on the same basis. The sum due on the notes amounts to $616.66, for interest on the notes to $12.55, aggregating a total of $628.26, which plaintiff has the right to recover. He is also entitled to 10 per cent attorney's fees on $628.26 and to legal interest on $616.66 from judicial demand.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and reversed, except as to the reconventional demand; and it is further ordered, adjudged, and decreed that plaintiff have judgment against defendant for the sum of $628.26, with 10 per cent attorney's fees thereon, and legal interest on $616.66 from judicial demand and cost.