## REED & BROWN, Inc., v. MORNING TREAT COFFEE CO.

### No. 1527.

Court of Appeal of Louisiana. First Circuit.
Dec. 9, 1935.

J. Oliver Bouanchaud, of Baton Rouge, for appellant.

450

Bert E. Durrett, of Baton Rouge, for appellee.

DORE, Judge.·

The plaintiff, a foreign corporation organized and existing under the laws of the state of New York, institutes this suit against the defendant, a Louisiana corporation, for the sum of $104, with legal interest from judicial demand. The basis of the suit is the following contract attached to the petition:

"Ship by parcel post, express F. O. B. New York, as soon possible twenty-six mats about one col. wide and reading matter, both as you think best, from your Little Jack Horner Series, and I—we hereby agree to pay you at New York, at the rate of four dollars per mat total one hundred and four dollars ($104.00) for my —our right to use the above mats and reading matter for one ½ year only from the ——— of the month following date of shipment in advertising the Coffee business in newspapers of and other media of Baton Rouge, State of La. only.

"Terms of payment Twenty-six dollars ($26.00) with order and thirteen Dollars ($13.00) on the first of each month, beginning Apl 1, 1933 until the whole account has been paid.

"Fifteen days after failure to meet any of the payments due, the whole amount remaining unpaid becomes forthwith due and payable.

"It is agreed that you will not hereafter give anyone in Baton Rouge any right to use the above mats and reading matter in newspapers of or other media of Baton Rouge, State of La. during said period, nor sell me—us at the same rate and term stated above, the right to use additional mats and reading matter of this series for the ensuing year.

"I—we understand that I—we shall arrange for publication in newspapers and other media and pay the cost of same, and that Reed and Brown, Inc., assumes no responsibility for cost or rate of publication.

"Neither party will be held responsible for any provisions or representations not embodied in writing herein, and this contract is not subject to cancellation.

"This agreement is subject to your acceptance at New York.
　　　"Morning Treat Coffee Co. Inc.
　　　　"By James A. Lieux, Pres.
"Dated Jan. 24, 1933."

The defendant met the issue and the liability tendered by the plaintiff with a twofold plea, somewhat in the nature of confession and avoidance. It admitted the execution of the contract sued on, but averred that it was not binding and imposed no obligations whatever on it, in that, "prior to and contemporaneously with the signing of the alleged contract, it was agreed between defendant's President, Mr. James A. Lieux, and Mr. Rider, the duly authorized agent and representative of the plaintiff, while acting in the scope of his employment, that the alleged contract would not be valid and binding upon the defendant, nor become operative as a contract unless and until the advertising campaign, which was the subject of the alleged contract had been submitted to and approved by Mr. H. S. Benjamin, of Baton Rouge, Louisiana, who was then defendant's advertising adviser. In other words, that said contract was entered into with a suspensive condition."

In the alternative, the defendant alleged that the contract, if found operative, was null and void because of fraud, deceit, and trickery practiced by plaintiff's agent on defendant's president, Mr. Lieux.

Timely objection was urged by plaintiff's counsel to the introduction of parol testimony to vary and contradict the terms of the written instrument, and on the further ground that the contract itself specially excluded from its terms, conditions, and stipulations any provisions or representations not embodied therein in writing. The trial court admitted parol testimony solely for the purpose of substantiating the allegations of fraud, and specially excluded the same for any other purpose whatever.

We are constrained to agree with the trial judge in this regard, because to permit parol testimony on any other theory would be running counter to article 2276 of the Revised Civil Code, which has been so often and so uniformly applied to contracts of this character. We quote the article: "Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."

Having arrived at this conclusion, we are brought to a consideration of the sole remaining issue of fraud. We think it is established by the evidence that the agent of the plaintiff corporation and the

president of the defendant corporation did discuss and have some understanding to the effect that the contract was to be submitted to a Mr. Benjamin, an advertising adviser to the defendant, for his scrutiny and approval, but any such understanding and agreement verbally entered into was clearly in contravention of the most prominent printed matter in the contract signed by the defendant's president in these words: "Neither party will be held responsible for any provisions or representations not embodied in writing herein, and this contract is not subject to cancellation."

Aside from this consideration, it is apparent that the agreement or reference to Mr. Benjamin was made before or during the discussion had between Rider and Lieux, because it appears that the final acts of the parties at this conference, however superinduced, were the signing of the contract, the issuance of the check for the cash payment bearing the notation, "part payment on advertisement contract," and the delivery of both of them to Rider, the agent of the plaintiff company.

It is not to be presumed that Mr. Lieux was inexperienced in matters of this character or could be easily importuned by an experienced advertising agent. It is shown that he himself had large experience in contracts of this character and in contracts with advertising concerns, and he must have read and fully understood the terms, conditions, and stipulations of the contract he entered into with the plaintiff. Not only this, he voluntarily delivered both the contract and the check to Rider without duress, but under an agreement which defendant claims suspended and held in mid-air such contract.

Counsel for defendant has very ably and speciously argued, both orally and in brief, that there inhered in the contract itself a suspensive condition, provable by parol testimony, and the case of Blaushild v. Rockhold et al., 7 La. App. 709, is cited in support of this position. That case, decided by the Second Circuit, is very persuasive, and would have a controlling influence here if it were not distinguishable in its important elements. In that case, while it is true that the suspensive condition which held the contract in abeyance was not expressed in the contract itself, the court held that the suspensive condition "is implied from the nature of the contract and the presumed intent of the parties." To justify the admission of parol testimony in that case, and to prove the existence of a suspensive condition, the court said:

"The parties to the contract well knew that the principal contractor could not sublet any of the work on the building to anyone who was not satisfactory to the architect.

"Plaintiff was familiar with the general rule that the architect must approve all subcontracts. Besides this, the contract was entered into with special reference to the specifications, which were made a part of it.

"These specifications provided in specific terms that the contractor should not employ any sub-contractor—'that the architect may within a reasonable time object to as incompetent or unfit.'

"Blaushild was familiar with these specifications. He had a copy of them and said he had read them before the contract was signed. He knew that he could not do the work without the sanction of the architect and he knew that the contract entered into could not ripen into a valid and binding obligation except upon condition that the architect would approve it."

As will be observed, the contract itself made special reference to the specifications, which were a part thereof, and such specifications contained a clause making the architect the final arbiter in the transaction. No such elements attached to the instant case, hence we do not feel that case controlling in a decision here.

The trial judge was called upon to pass upon these questions of fact and has decided them adversely to the defendant, and we do not find that he has manifestly erred in his findings thereon.

The judgment of the district court, for these reasons, is affirmed.