**McTEE & CO., Inc., v. BROWN FUNERAL HOME, Inc.**

No. 1892.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1938.

Benj. W. Miller, of Bogalusa, for appellant.

M. I. Varnado, of Bogalusa, for appellee.

DORE, Judge.

The suit is to recover of defendant the sum of $156 under a contract signed by defendant on December 19, 1935, wherein defendant company agreed to purchase from plaintiff 52 mats (advertising matter) known as "History of Beginnings" for said sum of $156, to be paid as follows: $39 on March 1, 1936, and the balance at the rate of $11.70 per month beginning April 1, 1936.

It is alleged and proven that these mats were delivered to defendant, payment demanded in accordance with the contract, but to no avail.

Defendant admits signing the contract, but avers that the contract was signed by its president and manager when he was in a great hurry, and that the contract as drawn by plaintiff's agent and salesman does not represent the actual agreement of the parties; that defendant's president advised plaintiff's salesman that he might be interested in buying the advertising matter some three or four months hence; that the salesman then proposed that they enter into a tentative contract 'for the service with the stipulation that if defendant sent a check by March 1, 1936, for $39 to cover the first payment the contract would be considered in full force and effect; and if defendant sent no such check by said date, then it was to be considered that no such contract was made.

Upon these issues, the case was tried, resulting in a judgment for plaintiff. Defendant has appealed.

█ The trial court properly admitted parol testimony at variance with the written document only for the purpose of showing fraud and misrepresentation in its confection; and the question of fraud and misrepresentation is the only question before this court.

█ However, according to defendant's answer, there was no binding contract of sale made at all, as the defendant reserved the right to make or destroy the contract at will; and under such a plain potestative condition, there could have been no binding contract. Civil Code, Articles 2024, 2034 and 2035. If such was the agreement, there was no binding contract, as defendant could have refused to purchase the service by not sending a check on the date stated without suffering any detriment or disadvantage whatever, but purely as its whim or choice might determine. See Colbert v. District Grand Lodge, La.App., 178 So. 694. It is

hardly to be presumed that the parties intended to enter into any such one-sided and nugatory contract and agreement; and such is not the contract under consideration. This defense need not be considered any further.

While the answer does not specifically so· allege, defendant's president did testify that when he signed the contract only the printed part was complete; that the. salesman was to fill in the blanks along the lines of the agreement above mentioned, but instead of doing so, the salesman falsely and fraudulently filled in the contract so as to make it an unconditional contract to purchase, which was not the actual agreement of the parties.

 Brown, the president and manager of defendant corporation, is an intelligent man with considerable business experience. In the absence of fraud, error or misrepresentation, a contract cannot be avoided because a party signed it without reading it, or where part of the contract is blank when signed. McCasky Register Co. v. Smith, 13 La.App. 557, 128 So. 189; Snell v. Union Sawmill Co. et al., 159 La. 604, 105 So. 728.

■ The trial judge correctly found that defendant had failed to prove fraud and misrepresentation. The contract as filled in fixes the price as agreed on, and the payments by installments are not questioned. There is no contention as to any fraud or misrepresentation relative to the articles sold. Plaintiff wrote defendant a letter on December 26, 1935, acknowledging the order and advising that the goods would be shipped at once, but that the first payment would not be expected until March 1, 1936. Plaintiff wrote another letter on December 30th advising that the advertising matter had been shipped by express on December 28th, informing defendant of the articles shipped and how to use the advertising to best advantage. The articles were received by defendant in due course; but according to the president, he did not receive or read the letter and did not know that the articles had been received at his place of business until March 1936 when a request for payment was made.

It is difficult to understand how both of these letters and the shipment itself could have reached defendant's place of business without some one in authority having some knowledge of this fact. To hold otherwise would indicate that defendant's business affairs were handled in a rather slip-shod and careless manner. The facts do not justify such an implication.

The facts and circumstances indicate that the contract contains the agreement of the parties whether the blank spaces were filled in before or after the signature of defendant was affixed. Defendant's president wanted to purchase the advertising matter but was not in a position at the time to make the payments. He admits that in three or four months he would be in a position to make the purchase; and in our opinion the first payment was deferred to March 1, 1936, to· meet that situation.

The case of Reed & Brown, Inc., v. Morning Treat Coffee Co., La.App., 164 So. 449, presented a situation very similar to .the present case, and it was there found that. the parol evidence admitted for the sole purpose of showing whether or not the salesman practiced fraud on the signer of the contract was not sufficient to show such fraud or misrepresentations. Nor do we think the testimony admitted in this case to show fraud· is sufficient to make such a showing of fraud or misrepresentation.

For these reasons, the judgment appealed from is affirmed.