147 So.2d 725 (1962)
ST. LANDRY LOAN COMPANY, Inc., Plaintiff and Appellant,
v.
Jeffery AVIE and Arthur Skinner, Defendant and Appellee.
No. 708.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1962.
Dissenting Opinion December 27, 1962.
*726 Garland & DeJean, by H. B. DeJean, Jr., and Stephen J. Ledet, Jr., Opelousas, for plaintiff-appellant.
Fusilier, Pucheau & Soileau, by J. William Pucheau and A. Gaynor Soileau, Ville Platte, for defendant-appellee.
Before FRUGÉ, CULPEPPER and HOOD, JJ.
HOOD, Judge.
This is a suit on a promissory note against Jeffery Avie as maker and Arthur Skinner as endorser. Avie could not be located for service of process and is not before the court. After trial on the merits, the district judge sustained Skinner's defense that he is illiterate and that, although he authorized his X mark to be placed on the note, in doing so he did not intend to obligate himself as an endorser. Judgment accordingly was rendered rejecting plaintiff's demands, and plaintiff has appealed.
The facts show that Avie is a member of the Armed Forces and he is the son-in-law of Skinner. Avie went to the plaintiff loan company to borrow $250.00 and was informed that since he was in the Army he would have to secure an endorser on his note. Avie left and returned later with his father-in-law, Arthur Skinner.
There is a conflict in the testimony as to exactly what transpired when the note in question was signed. Mr. Reed, plaintiff's assistant manager who handled the loan, testified that he explained in French to Skinner, an illiterate French-speaking Negro, that he was to sign as an endorser; that he told Skinner that if Avie did not pay the note, Skinner would have to pay it; that Skinner understood this explanation, after which Skinner "touched the pen" and then Reed placed Skinner's X mark on the face of the note, actually on a line intended for a co-maker.
On the other hand, Skinner testified that Avie's wife and children were living with Skinner and since the wife was mentally ill, the Army allotment checks for the support of the wife and children were made payable to Skinner in the sum of $177.00 per month. Skinner's version of the conversation at the time the note was signed is that Reed merely asked him if he would agree "to see about" paying the installments of $15.55 each month out of the allotment check received by Skinner from Avie. Skinner testified that he was not told that he was signing *727 the note as surety or as an endorser, or that he would have to pay the note in the event of Avie's default. Skinner does not deny that he touched the pen and that he authorized his X mark to be placed on the note.
After five monthly payments were made by Skinner, Avie stopped his allotment check and Skinner ceased making payments on the note. The suit followed.
The defendant does not allege fraud or misrepresentation on the part of the officers or agents of plaintiff corporation, and no fraud or misrepresentation has been proved. As we interpret the evidence, defendant contends merely that plaintiff failed to explain to him that he was executing the note as an endorser, that he thought he was merely promising to see that payments on the note were made from the allotment checks which he was then receiving from Avie, and that he did not understand that he was obligating himself to pay the note in the event of Avie's default.
The trial judge did not find that defendant was induced to sign the note by fraud or misrepresentation, but he concluded that defendant did not understand that he was obligating himself to become personally liable for the note when he authorized his mark to be placed on it, and that because of this "error of fact, as well as of law," defendant is relieved of liability on the note. In his reasons for judgment, the trial judge said:
"The Court being of the opinion that the defendant never understood the fact that by placing his mark or touching the pen to make a mark for his signature he would become personally liable for the note, in the event the maker did not pay. The defendant being under the impression that he was agreeing to take care of the payment as long as the maker would send him the check and therefore, his consent to have a mark placed on the note to indicate his name was made under error of fact, as well as of law. Therefore, the claim of the plaintiff should be rejected, * * *."
A party who signs a written instrument, or who places his mark or allows his mark to be placed thereon, is presumed to know its contents, and he cannot avoid the obligations which may be imposed on him by that instrument merely upon a showing that he had not read it, or that he had not had it read and explained to him, or that he did not understand its provisions. Fontenot v. Coreil, Orl.App., 2 So.2d 97 (Cert. denied); Snell v. Union Sawmill Co., 159 La. 604, 105 So. 728, 729; Price v. Taylor, La. App. 1 Cir., 139 So.2d 230; Watson v. Planters' Bank of Tennessee, 22 La.Ann. 14; Bennett v. Robinson, La.App. 2 Cir., 25 So.2d 641; Housecraft Division of Southern Siding Company v. Jones, Orl.App., 120 So.2d 662; and McTee & Co. v. Brown Funeral Home, La.App. 1 Cir., 183 So. 558.
In Snell v. Union Sawmill Co., supra, our Supreme Court said:
"The evidence does not support the charge of fraud and misrepresentation; the trial judge did not believe it, nor do we. It would serve no good purpose to review the evidence in the record, but it suffices to observe in the emphatic language of this court in Boullt v. Sarpy, 30 La.Ann. 494, 495, that `signatures to obligations are not mere ornaments.'
"If a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done. Murphy v. Hussey, 117 La. 390, 399, 41 So. 692; Baker v. Myatt, Dicks Motor Co., 12 Orleans App. 281." (Emphasis added.)
Also, in McTee & Co. v. Brown Funeral Home, supra, the First Circuit Court of Appeal held that:
"In the absence of fraud, error or misrepresentation, a contract cannot be *728 avoided because a party signed it without reading it, or where part of the contract is blank when signed."
In the relatively recent case of Housecraft Division of Southern Siding Company v. Jones, supra, the defendants had little or no education, they were unable to read and they did not know the contents of the contract which formed the basis for that suit when they signed it. No charge of fraud or error was made, however, and the Orleans Court of Appeal, relying upon and quoting from Snell v. Union Sawmill Co., supra, held that defendants were bound by their contract.
In the instant suit we cannot say that the trial judge erred in finding that when the defendant authorized the affixing of his mark to the note, he did not understand that he was obligating himself to pay it in the event his son-in-law defaulted. Although defendant misunderstood the nature of the obligation which he assumed in allowing his mark to be placed on the note, the evidence shows clearly that he was not induced to sign the note by fraud or misrepresentation of facts by agents of the plaintiff. His misunderstanding was due solely to his own fault in failing to have the note read and explained to him before he authorized his mark to be placed on it. Under those circumstances, we feel that there was no error of fact or error of law sufficient to relieve defendant of this obligation.
We are aware of the jurisprudence of this state which holds that where parties are not on an equal footing intellectually, the courts are particularly careful to scrutinize the evidence to be certain that the party with the greater knowledge does not take advantage of the ignorance of the other party. Gross v. Brooks, La.App. 3 Cir., 130 So.2d 674; Griffing v. Atkins, La.App. 1 Cir., 1 So.2d 445. In this case, however, no fraud or misrepresentation has been alleged or proved, and we find nothing in the evidence to show that plaintiff knowingly, willfully or fraudulently took advantage of defendant's ignorance.
Considering the facts, as found by the trial court, we must conclude that that court erred in rejecting plaintiff's demands.
For the reasons herein assigned, the judgment appealed from is reversed, and it is hereby ORDERED, ADJUDGED and DECREED that judgment be rendered herein in favor of plaintiff, St. Landry Loan Company, Inc., and against the defendant, Arthur Skinner, for the principal sum of $228.90, with interest thereon from February 22, 1961, at the rate of 3½% per month on the first $150.00 thereof, and 2½% per month on the balance, until June 20, 1963, at which time interest on any unpaid balance shall be at the rate of 8% per annum until paid, plus 25% additional on both principal and interest as attorneys fees, and for all costs of this suit, including the costs of this appeal.
Reversed and rendered.
CULPEPPER, Judge (dissenting).
Although I agree with the majority opinion's statement of the law, I do not think it properly applies the law to the facts of this case. I believe defendant's answer does allege error on his part induced by plaintiff's fraud. I believe further, that the district judge, who saw and heard the two witnesses involved, found as a fact that Skinner was induced to "touch the pen" by the false statement of plaintiff's assistant manager, Mr. Reed, that Skinner was "signing" to do nothing more than send in monthly a portion of Avie's allotment check.
Defendant alleged in his answer that he was unable to read or write and that he did not authorize anyone to place his X mark on the note as an endorsement "to make him bound or liable in any manner for the debts of Jeffrey Avie * * *." The note, which was already in the record attached to plaintiff's petition, shows Skinner's X mark signed as an endorser. If plaintiff's employee placed this illiterate negro's endorsement *729 on the note without his authorization, it clearly amounted to a deceitful and fraudulent act. More than simple error of fact was involved. Defendant is not alleging that he simply did not know what he was signing. He is saying that he did not authorize an endorsement, yet this is the way his X mark was signed. The answer does not use the words "fraud or misrepresentation" but the facts alleged clearly state a case of fraud.
Furthermore, I think the district judge found fraud was proved. In his written opinion he stated "The defendant being under the impression that he was agreeing to take care of the payments as long as the maker would send him the checks, and therefore, his consent to have a mark placed on the note to indicate his name was made under error of fact, as well as of law." The defendant here is illiterate and the evidence shows the only "impression" he received of the agreement was that stated to him by plaintiff's assistant manager, Mr. Reed. Therefore, the trial judge has actually found as a fact that the defendant was under the impression, induced by the statement of Mr. Reed, that he was agreeing to take care of the monthly installment payment as long as Avie sent Skinner the allotment check. Thus, Skinner's consent to have his mark placed on the note was given under error of fact induced by the fraudulent representation of Mr. Reed.
In reaching this finding of fact, the trial judge had to believe either Skinner or Reed. It was Reed alone who explained in French to Skinner the nature of the agreement he was signing. There were no other witnesses who heard and understood this conversation. Certainly we should not reverse the district judge on a finding of fact which he has reached on the basis of credibility of one witness for the plaintiff versus one witness for the defendant.
It is my conclusion that the defendant has alleged, and the district judge has found to be proved, a defense of error of fact induced by fraud on the part of the plaintiff. The district judge based this finding of fact on the credibility of witnesses. I do not think the appellate court should disturb this decision.
For the reasons assigned, I respectfully dissent.