Mr. Justice MILLER
 

 delivered the opinion of the court.
 

 The extent of the jurisdiction which may lawfully be as serted by the Federal courts over the officers of the executive departments of the government, has been mooted in
 
 *349
 
 this court from the case of
 
 Marbury
 
 v. Madison
 
 *
 
 down to the present time; and while the principles which should govern the action of the courts in that regard have been settled long since, the frequent application of late to this court, and to other Federal courts, for the exercise of powers not belonging to them, shows that the question is one not generally understood.
 

 In the case already referred to, of
 
 Marbury
 
 v. Madison, the Chief Justice commented at some length upon the power of the courts over the action of the executh e officers of the government, in the course of which he arrived at the conclusion that it is a question which must always depend upon the nature of the act'.' He then argues, that by the Constitution the President is invested with certain political powers, in the exercise of which he is to use his own discretion, and for which he is accountable only to his country and his conscience, and that he has officers to aid him in the exercise .of these powers, who are directly accountable to him. The acts of such an officer, he says, can never, as an officer, be examinable in a court of justice. He holds, however, that where an officer is required by law to perform an act, not of this political or executive character, which affects the private rights of individuals, he is to that extent amenable to the courts. The duty which it was held in that case could be enforced in the proper court by mandamus, was the delivery of a commission already signed by the President. The point, as there presented, was hew and embarrassing, and it is no reflection on the distinguished jurist who delivered the opinion to say, that the rule which governs the court in its action, in this class of cases, has since been laid down with more precision, without conflicting with the principles there stated.
 

 In the case of
 
 McIntire
 
 v. Wood,
 
 †
 
 an application was made to the Circuit Court for the District of Ohio for a
 
 mandamus
 
 to the register of the land office, to compel him to issue certificates of purchase to plaintiff for lands to which he
 
 *350
 
 supposed himself entitled by law. This court was of opinion that no power had been vested by Congress in the circuit courts to issue the writ in such cases. The reasoning of the court is not extended, but the case bears a strong analogy to the one under consideration.
 

 But in
 
 Kendall
 
 v.
 
 United
 
 States,
 
 *
 
 the majority of the court held that the courts of the District of Columbia had a larger power than the circuit courts, and could issue writs of mandamus to Federal officers in proper cases. As this is the first case in which the writ was actually ordered, it is worth while to examine the ground on which it was placed. “ The act required to be done by the Postmaster-General,” says the court, “ is simply to credit the relators with the full amount of the award of the solicitor. This is a precise, definite act, purely ministerial, and about which the Postmaster-General had no discretion whatever. This was not an official act in any other sense than being a transaction in the department where the books and accounts were kept, and was an official act in the same sense that an entry in the minutes of a court, pursuant to an order of the court, is an official act. There is no room for the exercise of any discretion, official or otherwise.”
 

 In this language there is no ambiguity, and in it we find a clear enunciation of the rule which separates the class of cases in which the court will interfere from those in which it will not. In the subsequent case of
 
 Decatur
 
 v. Paulding,
 
 †
 
 where the writ was refused, the Chief Justice, who had dissented in the former case, accepts both the doctrine of the right to issue the writ by the court of the district, and of the cases in which it may be issued, as .settled by the case of
 
 Kendall
 
 v.
 
 United States.
 
 “ The first question, therefore, to be considered,”'he says, “ is whether the duty imposed upon the Secretary of the Navy by the resolution in favor of Mrs. Decatur was a mere ministerial act?” The case of Mrs. Decatur arose under an act of Congress, and also a joint-resolution of that body of the same date, both providing
 
 *351
 
 compensation for the services of her deceased husband; but the measure of this compensation (which was to be paid to her by the Secretary of the Navy) was in the act different from what it was in the resolution. The secretary held that but one of these was inteuded by Congress, and gave her the election. She brought suit to compel him to give her both. It is clear she had no other legal remedy. The United States could not be sued. The secretary could not be sued in an'y other form of action than mandamus. But on the ground that the action- of the secretary involved the exercise of judgment and discretion, the order of the Circuit Court refusing the writ was sustained.
 

 This case is cited and relied on in the case of
 
 The Commissioner of Patents
 
 v.
 
 Whiteley,
 

 *
 

 and some of the observations of Chief Justice Taney, in delivering the opinion in the former, are so pertinent to the case before us, and state so well the relations of the judicial branch of the government to the officers engaged in the executive branch, that they may well be reproduced here.
 

 Speaking of the functions of these officers, he says: “ In general, such duties, whether imposed by act of Congress, or by resolution, are not mere ministerial duties. The head of an executive department of the government, in the administration of the various and important concerns of his office, is continually required to exercise judgment and discretion. He must exercise his judgment in expounding the laws and resolutions of Congress under which he is required to act.” “If,” he says, “a suit should come before this court, which involved the construction of any of those laws, the court certainly would not be bound to adopt the construction given by the head of the department. And if they supposed his decision to be wroug, they would, of course, so pronounce their judgment. But this judgment, upon the construction of the law, must be given in a case in which they have jurisdiction, and i-n which it is their duty to interpret the acts of Congress, in order to ascertain the rights
 
 *352
 
 of the parties before them. The court could not entertain an appeal from the decision of one of the secretaries, nor revise his judgment in any case, where the law authorized him to exercise judgment or discretion. Nor can it by mandamus act directly upon the officer, and guide and control his judgment or discretion in the matters committed to his care, in the ordinary exercise of his official duties. . . The interference of the courts with the performance of the ordinary duties of the executive departments would be productive of nothing but mischief, and we are quite satisfied that such a power was never intended to be given to them.” To the same effect are also the cases,
 
 United States
 
 v.
 
 Seaman;
 

 *
 

 Same
 
 v. Guthrie;
 
 †
 

 Same
 
 v.
 
 Commissioner of Land Office.
 

 ‡
 

 It may, however, be suggested, that the relief sought in all those eases was through the writ of mandamus, and that the decisions are based upon the special principles applicable to the use of that writ. This is only true so far as these principles assert the general doctrine, that an officer to whom public duties are confided- by law, is not subject to the control of the courts in the exercise of the judgment and discretion which the law reposes in him as a part of his official functions. Certain powers and duties are confided to those officers, and to them alone, and however the courts may, in ascertaining the rights of parties in suits properly before them, pass upon the legality of their acts, after the matter has once passed beyond their control, there exists no power in the courts, by any of its processes, to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action. The reason for this is, that the law reposes this discretion in him for that occasion, and not in the courts. The doctrine, therefore, is as applicable to the writ of injunction as it is to the writ of mandamus.
 

 In the one case the officer is required to abandon his right to exercise his personal judgment, and to substitute that of
 
 *353
 
 the court, by performing the act as it commands. In the other he is forbidden to do the act which his judgment and discretion tell him should be done. There can be no difference in the principle which forbids interference with the duties of these officer^, whether it be by writ of mandamus or injunction.
 

 Accordingly, in the casecof
 
 The State of Mississippi
 
 v.
 
 Johnson,
 

 *
 
 which was an application to this court for. the writ of injunction, in the exercise of its original jurisdiction, the court says that it is unable to perceive that the fact that the relief asked is by injunction takes the case out of the general principles which forbid judicial interference with the exercise of executive discretion.
 

 In the same case the Chief Justice gives is this clear definition of a ministerial duty in the relation i n which we have been considering it: “A ministerial duty, the performance of which may in proper cases be required of the head of a department by judicial process, is one in respect to which nothing is left to discretion. It is a simple, definite duty, arising under circumstances admitted or proved to exist aud imposed by, law.”
 

 The action of the officers of the land department, with which we are asked to interfere in this case, is clearly not of this character. The validity of plaintiffs’ entry, which is involved in their decision, is a question which requires the careful consideration and construction of more than one act of Congress. It has been for a long time before the department, and has received the attention of successive secretaries of the interior, and has been found so difficult as to justify those officers in requiring the opinion of the Attorney-General. It is far from' being a ministerial act under any definition given by this court.
 

 The numerous cases referred to by counsel, in which this court — after the title had passed from the United States, and the matter had. ceased- to be under the control of the executive department — has sustained the courts of justice in
 
 *354
 
 '.decreeing the equitable title to -belong to the person against, whom the department'had decided, are not-in conflict with these views, but furbish an additional rea’son for refusing to interfere with Such ’caáes while they remain under such control.
 

 Decree affirmed.
 

 *
 

 1 Cranch 137.
 

 †
 

 7 Id. 504.
 

 *
 

 12 Peters, 524.
 

 †
 

 14 Id. 497.
 

 *
 

 4 Wallace, 522.
 

 *
 

 17 Howard, 225.
 

 †
 

 Id. 284.
 

 ‡
 

 5 Wallace, 563.
 

 *
 

 4 Wallace, 475.