LAND, J.
This is a suit to set aside the incorporation of the village of Gretna by proclamation of the Governor of the state pursuant to section 11 of Act No. 136 of 1898, on the grounds that the petition on which said proclamation was based did not contain the signatures of two-thirds of the qualified electors of said village of Gretna, and was not published as required by law.
With this suit was cumulated an action to annul certain ordinances of said village of Gretna extending its municipal limits, on sundry grounds of illegality.
Defendants'excepted to plaintiff’s petition on the ground that it disclosed no cause or right of action. This exception was overruled.
Defendants then answered, and the case was tried on the merits. There was judgment for the plaintiff, and the defendants have appealed.
As the decision of the case involves on];, questions of law, it is unnecessary to go into the details of this factional controversy.
The village of Gretna was duly organized under the proclamation of the Governor, and ordinances were passed extending the limits of the municipality as provided by the statute.
This suit was instituted under section 2593 of the Revised Statutes of 1870, authorizing an actioD by the district attorney—
“when any association or number of persons shall act in this state as a corporation without being duly incorporated.”
Section 11 of Act No. 136 of 1898 reads as follows:
“Be it further enacted, etc.: That whenever a petition, signed by two-thirds of the electors of an hamlet or unincorporated village, shall be presented to the Governor, setting forth the metes' and bounds of their hamlet or village, stating the number of inhabitants therein, and praying incorporation, he shall inquire into the facts. If he finds the petition sufficient and sufficiently signed, and it be shown to his satisfaction that it lias been published in full for three weeks in some newspaper of the proposed municipality, if there be one, and if not, by posting in at least three conspicuous places in the hamlet or village, and that the place contains at least two hundred and fifty inhabitants, he shall, by proclamation, declare the village incorporated, defining its limits and boundaries, and fixing its name as ‘The Village of -.’ Such proclamation shall be filed in the office of the secretary of state, and remain a record thereof.”
*646 [1,2] An analysis of section 11 shows, that the presentation of a petition signed by the electors imposes no duty on the Governor except “to inquire into the facts,” and that the questions of the sufficiency of the petition, of the signatures thereto, of its publication, and the number of inhabitants of the hamlet or village, are left to the decision of the Governor. Under the same section, the Governor, if he finds certain facts to his own satisfaction, is directed to issue his proclamation declaring the village incorporated; and the next section requires the Governor, when any village has been thus incorporated, to appoint all the officers thereof, to hold their offices until the next general municipal election.
Act No. 136 of 1898 does not provide for any review of, or appeal from, the proclamation of the Governor, The incorporation of towns and villages belongs to the political department of the government.
In Cooley’s Constitutional Limitations (7th Ed.) p. 143, .appears the following note:
“In Shuneway v. Bennett, 29 Mich. 451 [18 Am. Rep. 107], the distinction between judicial and administrative power is pointed out, and it is held that the question of incorporating territory as a village cannot be made a judicial question. A like decision is made in State v. Simons, 32 Minn. 540, 21 N. W. 750, and by Chancellor Cooper in Ex parte Burns, 1 Tenn. Ch. 83, though it is said in that case that the organization of corporations may be referred to the courts.”
As there has been no such legislative reference in this state, the question remains purely administrative.
In Gaines v. Thompson, 7 Wall. 347, 19 L. Ed. 62, it was held that the exercise of the judgment and discretion of an executive officer cannot be interfered with by the courts, for the reason:
“That the law reposes that discretion in him for that occasion, and not in the courts.”
Among the authorities cited is Decatur v. Paulding, 14 Pet. 497, 10 L. Ed. 559, where Chief Justice Taney, in delivering the opinion of the court, said:
“The court could not entertain an appeal from the decision of one of the secretaries, nor revise his judgment in any case where the law-authorized him to exercise judgment or discretion. Nor can it, by mandamus, act directly upon the officer, and guide or control his judgment or discretion in matters committed to his care, in the ordinary discharge of his official duties. * * * The interference of the courts with the performance of the ordinary duties of the executive departments * * * would be productive of nothing but mischief; and we are quite satisfied, that such a power was never intended to be given to them.”
In Gaines v. Thompson, supra, the opinion recognized the power of courts to compel the performance of ministerial executive duties, in cases where “nothing is left to discretion.”
In Redfield v. Windom, 137 U. S. 636, 11 Sup. Ct. 197, 34 L. Ed. 811, the court quoted from Dunlap v. Black, 128 U. S. 40, 9 Sup. Ct. 12, 32 L. Ed. 354, as follows:
“The court will not interfere by mandamus with the executive officers of the government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the court having no appellate power for that purpose; but when they refuse to act in a case at ail, or when, by special statute, or otherwise, a mere ministerial duty is imposed upon them — that is, a service which they are bound to perform without further question — then, if they refuse, a mandamus may be issued to compel them.”
In Redfield v. Windom the court found that there were disputed questions of law and of fact, and affirmed the judgment below dismissing the petition for a mandamus.
We gather from these cases that the executive officer cannot be interfered with or controlled by the courts in the discharge of a duty involving the exercise of judgment or-discretion on questions of fact or of law or of both.
In the case at bar the statute makes it the duty of the Governor to inquire into and to find the facts, and to determine their sufficiency, under the statute, to warrant the incorporation of the village in question. In short, the duty imposed on the Governor is to *648 find the facts and to apply the law to them. It is obvious that the performance of such a duty involves the exercise of judgment and discretion.
The jurisprudence of the Supreme Court of the United States on this subject-matter was followed in the ease of State ex rel. Hope & Co. v. Board of Liquidation, 42 La. Ann. 658, 7 South. 710, where the court said:
“That whenever, by the Constitution and law of a state, officers of the executive branch of the government are vested with discretionary functions, in the performance of civil duties, or political powers and responsibilities are devolved upon them, they are not answerable to judicial process, but that their acts are only examinable politically.”
In State v. Mayor, etc., of Village of Dodson, 123 La. 905, 49 South. 640, this court refused to interfere in the matter of the fixing of an alleged starvation salary for the marshal by the board of aldermen, saying:
“Under the circumstances disclosed by the record, the courts of the state are without constitutional power or authority to interfere in the matter and to substitute their judgment and discretion in lieu of the judgment and discretion of the body to which it has been constitutionally and legally confided.”
Section 11 of Act No. 136 of 1898 has not been assailed as unconstitutional, and, as it vests in the Governor the power to inquire into the facts and to determine their sufficiency, the cases cited by the plaintiff, holding that executive officers were bound to accept and act on statutory petitions, when presented to them, have no application.
In so far as the petition of the relator seeks to annul the ordinances extending the limits of the village of Gretna, the exception of no cause of action should have been sustained. The relator has neither official nor private interest in the question, and, if he has, has not pursued the remedy prescribed by sections 3 to 6 of Act No. 136 of 1898.
It is therefore ordered that the judgment below be annulled, avoided, and reversed, and it is now ordered that plaintiff’s demands be rejected, and this suit be dismissed with costs.