ST. PAUL, J.
 

 Augustus C. McDougald, or McDougale, died intestate in Union parish on December 23, 1902, leaving a widow in community, to wit, Mrs. Martha A. McDougald, and seven minor children, viz: (1) Miss Addie McDougald, now wife of B. L. Snell; (2) Miss Pearl McDougald, now wife of H. P. (Mullen) Bowen; (3) Charles Henry McDougald ; (4) Miss J. Myrtle (Jimmie) McDougald, now wife of Perry Brasher, or Brasier; (5) Miss Laskie Vaughn (Larkin) McDougald, now wife of Ollie Butler; (6) Patrick Horace McDougald; and (7) Augustus Clayton McDougald.
 

 At his death he left inter alia a certain tract of 270 acres of timbered lands in said parish, all being in township 21 north, range 3 east, to wit:
 

 S.
 
 %
 
 of N. W.
 
 Vi
 
 of S. W.
 
 Vi
 
 of Sec. 22, say 30 acres; S. W.
 
 Vi
 
 of S. W.
 
 Vi
 
 of Sec. 22, say 40 acres; N. W.
 
 Vi
 
 of N. W.
 
 Vi
 
 of Sec. 27, say 40 acres; N. % of N. E.
 
 Vi
 
 of Sec. 28, say 80 acres; S.
 
 Vi
 
 of S. E.
 
 Vi
 
 of Sec. 21, say 80 acres.
 

 I.
 

 On March 4, 1909, Mrs. Addie Snell and' Mrs. Pearl Bowen had come of age; and on that day,' authorized and assisted by their husbands, they joined their mother in a deed by which these three sold to the Union Sawmill Company all-the pine timber of 8 inches or more on the above-described tract of land.
 

 This deed' was executed oh a printed form, and contained the following clause, to wit:
 

 “The party of the second part (Union Sawmill Company) shall cut and remove said timber'within a period of 12 years from tlie date hereof; or, if it shall not do so, it shall be responsible for and pay to the first party (Mrs. McDougald and her two daughters) the full ' amount of taxes assessed against said lands and timber after the expiration of said period of 12 years from this date until such time as said timber is removed and possession returned to said first party.”
 

 II.
 

 This deed was never accepted in writing by the Union Sawmill Company, and, although the deed recites that the sale is made in consideration of $1,800 paid in cash, admittedly the price was not paid at that time but only on July 29th following, as hereinafter stated.
 

 III.
 

 Between March 4th and July 29th, Mrs. McDougald qualified as tutrix of the five remaining minor children, and a family meeting had been called to authorize the sale of their interest in the timber. This was duly authorized on a basis of $1,800 cash for all the timber, and 12 years in which to remove it; but "there was no provision authorizing an “extension clause” such as that contained in the deed of March 4th.
 

 Accordingly, on July 29th, Mrs. McDougald executed a new deed, in which she declared that,- ‘.‘acting individually and as tutrix of
 
 *607
 
 the minors of A. C. McDougale, deceased * * * (and together with said minors being a
 
 mt
 
 interest holder in and to the pine ..timber (aforesaid) * * *,” she
 
 sold said
 
 pine timber to the Union Sawmill Company aforesaid “for and in consideration of $1,540, our proportion of the whole value of $1,800, receipt of which is now ’acknowledged”; which deed recites that “the party of the second part (Union Sawmill Company) shall have 12 years to remove the timber,” but contains no “extension clause” such as is found in the deed of March 4th and quoted above.
 

 And thereupon the purchaser delivered to the vendors a draft for $1,800, dated March 4, 1909, and payable to the order of Mrs. M. A. McDougale and children; which draft, after being duly indorsed by Mrs. McDougale individually, and as tutrix, and by Mrs. Snell and Mrs. Bowen, was duly collected.
 

 IV.
 

 On September 6, 1921, this suit was filed, more than 12 years having elapsed since the date of the deeds aforesaid without the timber having been removed. Meanwhile all the children had come of age, and Mrs. McDougald had died, leaving as her sole heirs the' seven children aforenamed, who are the plaintiffs here.
 

 The object of the suit is to cancel and erase from the parish records the deed of March 4, 1909, as a cloud upon their title to the timber on the lands aforesaid.
 

 They claim that said deed was obtained from their mother, and from Mrs. Snell and Mrs. Bowen, by fraud and misrepresentations, and that in any event, in view of the later deed of July 29th, the defendants are estopped from claiming anything against their mother’s share under the earlier deed of March 4th.
 

 V.
 

 The evidence does not support the charge of fraud and misrepresentation; the trial judge did not believe it, nor do we. It wduld serve no good purpose to review the evidence in the record, but it suffices to observe in the emphatjc language of this court in Boullt v. Sarpy, 30 La. Ann. 494, 495, that
 
 “signatures to obligations are not mere ornaments.’’
 

 If a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done. Murphy v. Hussey, 117 La. 390, 399, 41 So. 692; Baker v. Myatt, Dicks Motor Co., 12 Orleans App. 281.
 

 VI.
 

 As we have said, the deed of March 4th was never accepted in writing, and the price of the timber was never paid until July 29th. Between those two dates the Union Sawmill Company was therefore neither bound for the price nor had paid
 
 it;
 
 and accordingly the other parties to that deed were not bound either and might withdraw at any time. Campbell v. Lambert, 36 La. Ann. 35, 51 Am. Rep. 1.
 

 One of the parties to that deed (Mrs. MeDougald) did in fact withdraw therefrom by making a new deed to the timber containing different provisions before receiving payment. And it is immaterial whether these changes were made inadvertently or deliberately; for the fact remains that the changes were made, that they were made at a time when she had a right to make them at her pleasure, and that the price for the timber was paid on the deed as redrafted, and only after it had been so redrafted.
 

 Our conclusion is, as was also the conclusion of the trial judge, that the last deed, the deed of July 29th, was the only deed which was binding on both parties, and therefore the only deed by which to measure the rights of the parties upon the timber conveyed. And according to the terms of that deed the Union Sawmill Company had only
 
 *609
 
 12 years to remove the timber, and no right to an extension.
 

 This, of course, does not apply to Mrs. Snell and Mrs. Bowen, who accepted their portion of the price on the deed of March 4th without any modification thereof whatever.
 

 VII.
 

 The Frost-Johnson Lumber Company acquired the aforesaid timber lands from the Union Sawmill Company on October 15, 1917. It claims that it was entitled to rely upon the records as it found them, and hence is entitled to stand upon the deed of March 4th. But the deed of July 29th was also of record, and hence could not be overlooked, especially as it formed a necessary link in the title to fiveKfourteenths of the timber formerly belonging to the McDougald minors. The Frost-Johnson Lumber Company therefore had before it record evidence that there were apparently
 
 two
 
 deeds to Mrs. McDougald’s interest in the timber, the first providing for an extension, and the last containing no such extension. It behooved it, therefore, to inquire which of these two recorded deeds was the real deed between the parties. And since the evidence shows that the Union Sawmill Company, though a separate corporation, is practically only a subsidiary of the Frost-Johnson Lumber Company, our conclusion is that the latter had it in its power to discover, the facts had it chosen to investigate.
 

 VIII.
 

 The judgment appealed from fixed the interest in the timber at seven-fourteenths to the seven heirs of Mrs. McDougald, five-fourteenths to the five former minors, and two-fourteenths to the Frost-Johnson Lumber Company (acquired from Mrs. Snell and Mrs. Bowen); and that judgment seems to us correct.
 

 Decree.
 

 The judgment appealed from is therefore affirmed.