7 So.2d 607

STATE ex rel. GALLOWAY, Dist. Atty., et al. v. ROBERTS et al.

No. 36388.

March 2, 1942.

James U. Galloway and John B. Files, both of Shreveport, for plaintiffs, appellants.

Cook, Cook & Egan and Edwin F. Hunter, Jr., all of Shreveport, for defendants, appellees.

O'NIELL, Chief Justice.

This is a suit to annul the incorporation of the village of Oil City, in the parish of Caddo. Such a suit may be brought in the name of the State on the relation of the District Attorney, according to the provisions of Section 2593 of the Revised Statutes, as amended by Act No. 102 of 1928, "When any association or number of persons shall act within this State as a corporation without being duly incorporated." Several taxpayers in the village are also plaintiffs in this case. The suit was brought against the mayor and aldermen appointed by the Governor on the issuing of his proclamation incorporating the village.

The defendants filed an exception of no cause or right of action, contending that the proclamation of the Governor incorporating the village was a matter in which he exercised his judgment and discretion, in the performance of a political function, and was therefore not subject to judicial review or investigation. The exception was overruled. The defendants then answered, and the case was heard on its merits, and judgment was rendered rejecting the demand of the plaintiffs. They are appealing from the decision.

The plaintiffs alleged, as their main cause of action, that the petition on which the Governor issued his proclamation incorporating the village was not signed by as many as two-thirds of the number of electors residing in the area sought to be incorporated. The plaintiffs alleged also, as additional grounds on which the incorporation should be annulled, first, that the petition on which Governor Jones acted was not addressed to him, but was addressed to his predecessor, Governor Earl K. Long, who went out of office without having acted upon the petition; second, that the petition was not published or posted as required by the statute; and, third, that the petition was never presented to or considered by Governor Jones, but was read and considered only by the Attorney General, or by one of his assistants, on whose opinion and advice the Governor issued his proclamation.

The defendants insist that their exception of no cause or right of action should have been maintained. The statute on the subject is Act No. 136 of 1898, the 11th section of which provides:

"That whenever a petition, signed by two-thirds of the electors of any hamlet or unincorporated village, shall be presented to the Governor, setting forth the metes and bounds of their hamlet or village, stating the number of inhabitants therein, and praying incorporation, he shall inquire into the facts. If he finds the petition sufficient and sufficiently signed, and it be shown to his satisfaction that it has been published in full for three weeks in some newspaper of the proposed municipality, if there be one, and if not, by posting in at least three conspicuous places in the hamlet or village, and that the place contains at least two

hundred and fifty inhabitants, he shall, by proclamation, declare the village incorporated, defining its limits and boundaries, and fixing its name as 'The Village of ———.' Such proclamation shall be filed in the office of the Secretary of State, and remain a record thereof."

The statute does not authorize the Governor to create a municipal corporation on his own initiative, or without being requested so to do by two-thirds or more of the electors residing within an area which they desire to have incorporated. It is only when the Governor is presented with such a petition that he may proceed to inquire into the facts, to ascertain how many of the petitioners are actually qualified electors residing within the area proposed to be incorporated, and to ascertain the total number of electors residing within that area. If he finds among the signers of the petition a sufficient number of qualified electors residing within the area proposed to be incorporated, to constitute two-thirds or more of the total number of electors residing within that area, and if it is shown "to his satisfaction" that the petition has been published or posted as the law requires, and that the proposed village has at least 250 inhabitants, he shall then—and not until then—issue his proclamation declaring the village incorporated, defining its boundaries, and giving it a name. In ascertaining whether the facts will warrant the issuing of the requested proclamation, the Governor is not performing an ordinary function of his office as chief executive, but is acting only upon the authority granted to him by the act of the Legislature. State ex rel.

Higgins, District Attorney Pro. Tem., v. Aicklen et al., 167 La. 456, 119 So. 425. In the process of ascertaining who are and who are not qualified electors, and of ascertaining who are and who are not actual and bona fide residents in the area proposed to be incorporated, the Governor must exercise some judgment and discretion; and his conclusions on the subject are entitled to great weight; but they are not controlling; for, if they were, the provisions of Section 2593 of the Revised Statutes—so far as they relate to municipal corporations—would be of no avail. The statute provides: "An action by petition may be brought before the proper district court by the District Attorney * * * in the name of the State against the party or parties offending in the following cases: * * * Third—When any association or number of persons shall act within this State as a corporation without being duly incorporated." It was conceded in the Aicklen case that Section 2593 of the Revised Statutes—which was a re-enactment of Section 1 of Act No. 58 of 1868 as amended by Act No. 156 of that year—was applicable to municipal corporations; but it was argued that the statute had to yield to any subsequent legislation with which it might be inconsistent, and, specifically, that it had to yield to the provision in Act No. 136 of 1898 which was said to make the findings of fact and the proclamation of the Governor conclusive, in effect, on the question of legality of the incorporation. That argument was founded upon the assumption that there was a provision in the act of 1898—presumably in Section 11—making the findings of fact and the proclamation of the Governor conclu-

sive, in effect, on the question of legality of the incorporation. We found that the act of 1898 did not make the findings of fact and the proclamation of the Governor conclusive; but, even so, the argument that the act of 1898, being a later law, should prevail over Section 2593 of the Revised Statutes of 1870 is not appropriate now, because that section of the Revised Statutes has been reenacted since 1898, by Act No. 102 of 1928.

■ To hold that the Governor's finding that a petition for the incorporation of a proposed village· is "sufficiently signed" is conclusive on the question of legality of the incorporation would, virtually, do away with the necessity for a petition, and would give the Governor carte blanche in the matter of imposing municipal government and the consequent local taxation upon the inhabitants of the erstwhile unincorporated settlements throughout the state. So far as the decision rendered in State ex rel. Marrero, District Attorney, v. Ehret et al., 135 La. 643, 65 So. 871, maintains that the conclusion of the Governor on the question of sufficiency of the number of signers of a petition for the incorporation of a village is not subject to judicial investigation, the decision cannot be reconciled with our opinion in this case, and henceforth must be considered overruled. This ruling will not endanger acts of incorporation of municipalities of long standing, because it will require only a short time to make it impossible to find evidence sufficient to overcome the presumption of accuracy of the Governor's count of the number of qualified electors who resided·in any given area on or about the date of his proclamation.

Our conclusion is that the judge was right in overruling the defendants' exception of no cause or right of action.

■ We concur also in the finding that the evidence offered by the plaintiffs is not enough to overcome the presumption that the petition on which the Governor acted was signed by two-thirds or more of the electors residing in the area incorporated. The defendants, before answering the suit, obtained an order of court requiring the plaintiffs to point out among the signatures on the petition to the Governor the names of those whose qualifications would be questioned. The plaintiffs pointed out the names of 24 signers of the petition who, although they resided within the proposed village at the time when they signed the petition, moved out before the date of the Governor's proclamation, which date was July 30, 1940. The plaintiffs showed also that there were 16 other signers of the petition who were disqualified—either for having failed to register or for having failed to sign the poll list—at or before the time when their qualifications were tested, which was on December 11, 1940. Assuming that the 16 disqualified signers of the petition were disqualified on July 30, 1940, and adding to that number the 24 nonresidents of the village, the judge deducted 40 from the number of signatures on the petition. Two of the plaintiffs made an unofficial census of the adult population of the village, in September and October, 1940, and on December 11, 1940, the registrar of voters checked the names on this list of residents of the village, in order to show how many of them were qualified electors. Assuming that the mak-

ing and checking of the list was done accurately, the judge found the net result to be that the petition on which the Governor issued his proclamation lacked at least three signatures—possibly six—to constitute two-thirds of the number of electors residing in the village on December 11, 1940. But the registrar of voters, who was a witness for the plaintiffs, explained on cross-examination that her testimony was based upon the number of registered voters on December 11, 1940, that she did not know how many of them had registered after July 30, 1940, the date on which the Governor issued his proclamation, and hence that she could not say whether the petition to the Governor did or did not bear the signatures of two-thirds of the electors residing in the village at the time when the Governor issued his proclamation. The presumption therefore remains that the Governor was right in his finding that the petition was sufficiently signed.

■ We agree with the judge of the district court that the other complaints of the plaintiffs are not well founded. The petition for the incorporation of the village was addressed to Governor Earl K. Long because it was filed in the latter part of 1939, and Governor Long did not complete his term of office until May 14, 1940, when Governor Jones was inaugurated. The fact that Governor Long did not act upon the petition does not signify that he rejected it. After Governor Jones came into office someone—whose identity does not appear in the record—changed the name of the addressee on the petition from Governor Long to Governor Jones. That was a matter of no importance, because the petition was addressed not to either of the individuals but to the Governor. It was not necessary to state the name of the Governor in the petition.

■ The reason why the petition was not published in a newspaper in the proposed village is that there was no newspaper published within that area. For that reason copies of the petition were posted in three conspicuous places in the proposed village, as the statute required. The three copies which were posted were manifold copies —carbon copies—of the petition. It is argued that the petition itself should have been posted in three conspicuous places, and hence that the petition should have been signed in triplicate. The statute does not require that the petition itself shall be posted, but requires merely that it shall be published "by posting in at least three conspicuous places", if there is no newspaper in which to publish it. That means that copies of the petition shall be posted.

[9] There is not enough proof of the allegation that the petition was not presented to or considered by the Governor. On the contrary, the evidence on which the plaintiffs rely, consisting of certain correspondence, indicates that, between the 24th and 30th of July, the Governor was inquiring into the manner of posting of the petition. On July 24, an assistant attorney general wrote a letter to the Governor saying that one of the attorneys for the petitioners had asked him, the assistant attorney general, for an opinion in the matter. On July 29 the Governor received a telegram from one of the petitioners explain-

how the petition had been published by posting. There is a letter from one of the attorneys showing that he mailed the petition from Shreveport to the Secretary of State in Baton Rouge on August 3, 1940; but that does not prove that the petition was not in the hands of the Governor on or before July 30, when he issued his proclamation.

The judgment is affirmed.

ROGERS, J., concurs in the result.