HALL, J., pro tern.
On June 16, 1959, the Honorable Lether E. Frazer, then acting Governor of the State of Louisiana, issued his proclamation incorporating two communities situated in the Eleventh Ward of the Parish of Jefferson known as Grand Isle and Cheniere Caminada into the “Town of Grand Isle”.
This action of the Governor was taken by virtue of the authority in him vested by LSA-R.S. 33:52 which reads as follows:
“Whenever two-thirds of the electors of an unincorporated settlement sign and present to the governor a petition setting forth the metes and bounds of their unincorporated settlement, stating *199 the number of inhabitants therein, and praying incorporation, he shall inquire into the facts. If he finds the petition sufficient and sufficiently signed, and it be shown to his satisfaction that it has been published in full for three weeks in some newspaper of the proposed municipality, if there be one, and if not, by posting in at least three conspicuous places in the proposed municipality, and that the proposed municipality contains at least one hundred and fifty inhabitants, he shall, by proclamation, declare the municipality incorporated, defining its limits and boundaries, and fixing its name. This proclamation shall be filed in the office of the Secretary of State, and remain a record thereof.”
After issuance of the proclamation and its due filing in the office of the Secretary of State, a mayor and other municipal officers for the newly created “Town of Grand Isle” were duly selected and inducted into office.
On September 17, 1959, this suit was filed by the State of Louisiana on the relation of Frank H. Langridge, District Attorney in and for the Parish of Jefferson, alleging that the proclamation of incorporation of the Town of Grand Isle is invalid for a number of reasons, and that the defendants, the Mayor and the Board of Aldermen of the said municipality, were usurpers and intruders into office and were acting in an unlawful and illegal capacity as such municipal officers. The District Attorney’s suit was filed by virtue of and pursuant to the authority contained in LSA-R.S. 42:76. See State ex rel. Galloway v. Roberts, 200 La. 36, 7 So.2d 607.
Plaintiff’s petition alleges that the incorporation of the Town of Grand Isle is invalid on various grounds as follows:
a) That the petition for incorporation was not signed by some of the persons whose names appear thereon.
b) That the petition for incorporation was signed by some persons who were not qualified electors.
c) That the names of some persons appear on the petition more than once.
d) That the petition for incorporation was fraudulently misrepresented to a number of the signers.
e) That some persons’ names should be struck from the petition for various and miscellaneous other reasons.
After full trial on the merits the District Judge rendered judgment in favor of the defendants and dismissed the suit. Plaintiff prosecutes this appeal from that judgment.
For convenience we shall first review the facts and state our conclusions thereon, reserving to a later part of this opinion a' discussion of the law upon which such conclusions are based.
At the outset we wish to commend counsel for both parties for the very excellent briefs filed by them. Without the benefit of such briefs, particularly on the facts, the difficult task of reviewing the thirteen volumes of this record would have been well nigh insurmountable.
In considering the matter of the issuance of his proclamation the Governor had before him, in addition to the signed petition of electors, a certificate of the Registrar of Voters of Jefferson Parish dated May 8, 1959, certifying: “ * * * That there are 862 duly qualified registered electors in the Eleventh Ward of the Parish of Jefferson which comprises Grand Isle and Cheni-ere Caminada. That of the names and signatures subscribed to the attached petitions, 591 are duly qualified registered electors of said Eleventh Ward of the Parish of Jefferson, which is more than two-thirds of the number required for the purpose set forth in the attached petitions.”
Both parties question the accuracy of the Registrar’s certificate as to the number of qualified registered electors in the Eleventh Ward.
Plaintiff maintains that as of May 8, 1959, the date of the Registrar’s certificate, there were actually three more duly quali *200 fied registered electors in the Eleventh Ward than his certificate shows. Plaintiff claims that the Registrar made a mistake in his count and that an accurate count of the electors listed on the Registrar’s certified list (Exhibit B) shows a total of 863 names instead of 862. Our count does not bear out plaintiff’s contention in this regard. Plaintiff also contends that two persons (Edgar D. Perkins, registered April 23, 1959, and William L. Peters, registered April 6, 1959) should have been certified as being registered as of May 8, 1959, but were not included on the list certified by the Registrar. The record sustains plaintiff’s contentions in this regard.
The defendants contend, on the other hand, that there were but 858 qualified registered electors within the metes and bounds of the unincorporated settlements of Grand Isle and Cheniere Caminada as set forth in their petition; that the Registrar’s certificate in terms covers the entirety of Ward Eleven whereas the area sought to be incorporated is somewhat less than the area of Ward Eleven, and that the Registrar’s count of qualified registered electors includes the names of Lee Qwong Pen and Batiste Nelson who reside in Ward Eleven but outside of the area to be incorporated.
We digress here to state that all testimony sought to be adduced by defendants on this score and on other attempts by defendants to vary, alter, or contradict the Registrar’s certificate was objected to by plaintiff on the ground that defendants, having filed and relied on the certificate in obtaining the Governor’s proclamation are estopped to deny its accuracy. The District Judge permitted all such evidence to be taken subject to the objection. For the reasons hereinafter set forth we are of the opinion that plaintiff’s objection is not well grounded.
Returning now to Lee Qwong Pen and Batiste Nelson, we are of the opinion that the record supports defendants’ contention as to Lee Qwong Pen but not as to Batiste Nelson.
Defendants also contend that Irvin Barthelemy and Hervin Barthelemy are one and the same man and the Registrar erroneously included both names in his computation of 862 electors. Defendants produced testimony to the effect that some of the signatures on Irvin’s voting records matched some of those on Hervin’s records; however, the fact that Irvin and Hervin are two distinct persons is proved by the fact that while their names are similar their registration certificates show that they have different jobs, different parents •and different birthdays. We are of the opinion that the Registrar was right in counting both names.
Defendants further contend that Daniel Middleton, registered as an elector from Ward Eleven should not have been counted by the Registrar because he died on or about June 1, 1958. Defendants’ contention in this regard cannot be sustained because it constitutes a collateral attack on Middleton’s registration.
By counting Perkins and Peters and striking Lee Qwong Pen, we arrive at the figure 863 which constitutes in our opinion the number of qualified registered electors within the area sought to be incorporated.
For the purpose of determining the two-thirds majority necessary for incorporation, we are of the opinion that the petition presented to the Governor must be signed by at least 576 persons whose signatures are valid.
Although the petition presented to the Governor contains 625 names the Registrar for various reasons eliminated 34 names and certified only 591 as being valid.
Defendants contend that 11 of the 34 names should not have been eliminated by the Registrar. In this connection they were met with the same obj ection that they are estopped to vary, alter or contradict the Registrar’s certificate.
*201 These eleven names must be considered individually:
1. Doltie Tillie. Her signature was excluded by the Registrar because the signature on the petition did not appear to correspond with the signature on the registration roll. A Mrs. Doltie T-I-L-L-E being sworn as a witness for defendants testified that she signed “Doltie Tillie” on the petition but did not offer any explanation as to why she misspelled her true name when she signed the petition; neither did she testify that she is the person who is registered as “Doltie Tillie”. Her name was properly excluded by the Registrar.
2. Mrs. Cyril Justice. Her signature was excluded by the Registrar for the reason that the signature on the petition did not appear to him to correspond with the signature on the registration roll. However, Mrs. Cyril Justice testified that she is a registered voter and that the signature on the petition was actually placed thereon by her. Her name should be restored to the list.
3. Mrs. Juanita Kimball. Her signature was not. counted by the Registrar for the reason that the name “Juanita Kimball" does not appear on the registration roll although the roll contains a “Mrs. Juanita Kimbrell”. Mrs. Juanita Kimbrell appeared as a witness and testified that she is a registered voter and that the signature “Juanita Kimball” was actually placed by her on the petition and explained why she had written her name “Kim-ball”. Her testimony was corroborated by defendants’ handwriting expert, Gilbert J. Fortier. Her name should be restored to the list.
4. Mrs. Emile T. Prejean, Jr. Her signature was excluded by the Registrar for the reason that the registration roll contains no such name. However, the registration roll contains the name' “Mrs. Beulah Prejean”. Mrs. Beulah Prejean testified that she signed the petition “Mrs. Emile T. Prejean, Jr.”; that she is registered as “Mrs. Beulah Prejean” and that Mrs. Emile T. Pre-jean, Jr., and Mrs. Beulah Prejean are one and the same person, she being the wife of Emile T. Prejean, Jr. Plaintiff attempted to show that Mrs. Pre-jean no longer lives at Grand Isle but neither plaintiff nor defendant can be allowed to attack the registration coir laterally. Her name should be restored to the list.
5. Leon Cheramie. His signature was not counted by the Registrar because it did not appear to the Registrar to have been made by him. However, this person testified that he signed the petition having recently learned to write his name. His name should be counted.
6. Mrs. Leon Cheramie. Her signed signature appears on the petition in one place and her witnessed “X” appears in another place. Because she votes with an “X” the Registrar removed the signed name, but counted the “X”. We see no error in this.
7. Jesse Melancon. No such person was registered to vote. His name was properly stricken by the Registrar.
8. Mrs. Jesse Melancon. Her name was removed by the Registrar because the signature did not in his opinion correspond to the signature on the registration roll. She testified that she did not sign the petition. Her name was properly excluded.
9. Mrs. Ozama Savoie. Her name was removed by the Registrar because no such person was registered to vote. However, Mrs. Savoie testified that she signed the petition and that she is the same person who is registered as “Mrs. Rene P. Savoie”. Her name should be restored to the list.
*202 10. Mrs. Clyde Savoie. Her name removed because not registered. Mrs. Savoie however, testified that the signature on the petition is hers and that she is the same person registered as “Mrs. Irene Savoie”. Her name should be restored to the list.
11. Kaleb Thibodeaux. His signature was stricken by the Registrar because he votes with an “X”. His witnessed “X” appears in another place on the petition and was apparently counted. We see no error in this.
In summary we conclude that the Registrar should have certified six more names than he did, thus bringing to 597 the number of qualified registered electors who apparently signed the petition.
Plaintiff alleges that 50 of these 597 electors should not be counted in calculating the required two-thirds majority. He alleges that 34 of the 50 were deceived by the proponents of incorporation into signing the petition. These alleged victims of deceit are considered hereinafter in globo. The remaining • 16 were attacked on various grounds and are considered individually as follows:
1. Emile Cheramie, Jr. He was not registered and did not testify. His name should have been removed by the Registrar along with the 34 other names removed by him, and should not be counted.
2. Mrs. Howard Rigaud or Mrs. Ida Rigaud. She testified that she signed twice — once as Mrs. Howard Rigaud and once as Mrs. Ida Rigaud. One of her signatures should be excluded.
3. Mrs. Leoncia Barthelemy. She denies placing her “X” on the petition and the proof preponderates to that effect.
4. Mrs. Theodore Collins. She denies having affixed her “X” mark to the petition and defendants admit that she should not be counted.
5. Mrs. Euphemie Garcia. Her son signed the petition for her but proof of his authority is lacking. She should not be counted.
6. Beverly Calíais. She testified at first that she did not remember whether she signed the petition; then she said the only petition she ever signed was four or five years ago. Defendants’ handwriting expert, Gilbert J. Fortier, after comparing her signature made in Court with the signature on the petition, testified that the signature on the petition is genuine. Her signature should be counted.
7. Charles Newberry. Testified that he left Grand Isle in April 1958, and has been a registered voter in Clear-water, Florida, since April 1959. He further testified that he did not sign the petition. His signature should not be counted.
8. Mrs. Charles Newberry. Same testimony as Charles Newberry. Her signature should not be counted.
9. Mrs. Louis Bradberry. The testimony shows that her husband signed her name to the petition in her presence and at her request. She should be counted.
10. Adolph Solomon. The testimony with reference to this elector is most confusing. However, he denies having placed his “X” mark on the petition and denies having authorized anyone else to do so. He should not be counted.
11. Angelina Solomon. The testimony relative to her is similar to that' concerning Adolph Solomon. She should not be counted.
12. Mrs. Lederic Sandras. The testimony shows that her hubsand signed the petition for her at her request and in her presence. Her name should be counted.
*203 13. Mrs. Leonce Santiny. This person was dead at the time of the trial. The testimony shows that her son made his mother’s mark on the petition. His mother was not present at the time, and his authority to act is not sufficiently shown. Her name should not be counted.
14. Mrs. Elodie Shepard. She signed twice. One signature should be eliminated.
15. Alice Thibodeaux. The testimony shows that only one of the two subscribing witnesses actually saw her place her “X” mark on the petition. However, she testified that she did place her “X” thereon. She should be counted.
16. Valrie Rivet. He testified- he did not sign. There is some testimony by the handwriting expert that the signature on the petition is genuine, but it is not too clear. He should not be counted.
To sum up, we conclude that twelve of the above sixteen names should be stricken from the petition.
The remaining 34 names challenged by plaintiff are challenged by him on the alleged ground that they were deceived into signing the petition by the proponents thereof. The apparent basis of the alleged charge of fraud is that the circulators of the petition for incorporation represented it as a petition to obtain water and gas only — not a petition for incorporation of the area. Plaintiff produced the testimony of a large number of witnesses in an attempt to prove his allegations. They have been referred to throughout the trial as “water and gas” witnesses. A substantial number of them testified adversely to plaintiff’s contentions leaving only 34 now in contest. Although these 34 witnesses testified that the circulators did not explain that the petition they signed was for incorporation of the Town of Grand Isle but led'them to believe rt was fór"“water and gas” only, not one of them testified he read the petition. Some of them could read and did not do so. Many had a spouse or relative present who could read but they did not ask the spouse or relative present to read the petition to them. No witness testified that he asked the circulator of the petition to read it to him. No witness testified that the circulator sought to avoid reading the petition to him or to prevent him from reading it or having it read to him.
The testimony of these “water and gas” witnesses is categorically denied by the circulators of the petition.
Moreover, the fact that a petition for incorporation was being circulated was well known in the community. Mass meetings were advertised and held at which the matter was discussed. . The petitions were posted in accordance with law in prominent places and yet some of the witnesses testified that they didn’t learn of the effort being made to incorporate until after issuance of the Governor’s proclamation. On the other hand, some of them testified that they learned that the petition was for incorporation shortly after they signed it and did nothing to remove their names.
The District Judge evidently concluded that plaintiff failed to prove that any fraud or deceit had been practiced by the circulators of the petition and that is also our conclusion.
In final summary we find that there were 863 qualified registered electors entitled to sign the petition; that the petition contains the valid signatures of 585 of said electors which is more than the two-thirds majority (576) required by law for the issuance of the Governor’s proclamation.
Our conclusions are based on the following legal propositions:
1. There is a presumption that the petition on which the Governor acted was signed by two-thirds or more of the electors residing in the area incorporated, and *204 .the burden of proof is on the plaintiff to show otherwise. State ex rel. Galloway v. Roberts, 200 La. 36, 7 So.2d 607.
2. The judgment of the trial court on questions of fact will not be disturbed except where there is manifest error.
3. The plea of estoppel is inapplicable to this case. Plaintiff argues that the defendants are estopped to question the accuracy of the Registrar’s certificate because they relied on it when they included it as part of their documents submitted to the Governor. Defendants rely on their petition which they were required by law to file. They do not rely on the Registrar’s certificate. They are not required by law to file one, and filing it amounts to no more than a matter of convenience to the Governor who under the Statute has complete discretion as to the manner in which he arrives at the number of registered electors. The Governor could, if he chose, completely ignor the certificate and rely on a check of the original registration rolls made by some member of his staff delegated for that purpose. Moreover, plaintiff meets none of the essential features of an estoppel as he fails to show that he pursued a course of action which resulted to his prejudice and which he would not have followed had he not been misled by defendants’ filing of the certificate. Succession of Butterworth, 195 La. 115, 196 So. 39; Eaton v. Eaton, 227 La. 992, 81 So.2d 371; Louisiana Oil Refining Corporation v. Williams, 170 La. 218, 127 So. 606; State ex rel. Porterie v. Gulf, Mobile & N. R. Co., 191 La. 163, 184 So. 711; McDonald v. Shreveport Mut. Bldg. Ass’n, 178 La. 645, 152 So. 318; Harvey v. Richard, 200 La. 97, 7 So.2d 674.
4. Elector’s qualifications cannot be collaterally attacked. LSA-Constitution, Article 8, Section 5. Landry v. Ozenne, 194 La. 853, 195 So. 14; Turregano v. Whittington, 132 La. 454, 61 So. 525; Perez v. Cognevich, 156 La. 331, 100 So. 444; Doughty v. Allen, 170 La. 556, 128 So. 514; Smith v. Police Jury, 125 La. 724, 51 So. 701; Davis v. Hill, 8 La.App. 43. We do not find that State ex rel. Galloway v. Roberts supra cited by defendants is necessarily in conflict with these decisions.
5. Plaintiff urges that persons signing an incorporation petition must sign exactly the same as shown on the registration rolls. We know of no law or jurisprudence to that effect. Where the proof is positive and clear that the petition was actually and admittedly signed by a person who is proved to be a qualified registered elector it makes no difference, in our opinion, whether the signature on the petition varies from the signature on the registration rolls. It is merely a question of identity of the person.
6. The signature of a voter may be attached to a petition by someone else in the presence of the voter and at his request or with his permission. Waggoner v. Grant Parish Police Jury, 203 La. 1071, 14 So.2d 855; Coats v. Guaranty Bank & Trust Co., 174 La. 503, 141 So. 41.
7. Absent a statutory prohibition the circulator of a petition is not disqualified to witness the mark of a signer. Plaintiff cites Roy v. Board of Supervisors, etc., 198 La. 489, 3 So.2d 747, to the contrary. That case deals with a recall statute which contains a specific prohibition.
8. In our opinion if a registered elector testifies that his witnessed “X” mark appearing on a petition for incorporation was placed thereon by him, his name should be counted regardless of whether one of the two witnesses to his mark did not actually see him sign.
9. A person who signs a document is bound by his signature thereto. “If a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done”. Snell v. Union Sawmill Co., 159 La. 604, 105 So. 728. *205 See also: Fontenot v. Coreil, La.App., 2 So.2d 97; Watson v. Planters’ Bank, 22 La.Ann. 14; Alexander Hamilton Institute v. Hollis, 16 La.App., 448, 133 So. 458; McTee & Co., Inc. v. Brown Funeral Home Inc., La.App., 183 So. 558; Boagni v. Fouchy, 26 La.Ann. 594; Jeffcoat v. Hammons, La.App., 160 So. 182; McCasky Register Co. v. Smith, 13 La.App. 557, 128 So. 189; Boullt v. Sarpy, 30 La.Ann. 494.
10. In the absence of proof of fraud a person who signs a petition for incorporation cannot remove his name therefrom after the Governor has taken final action on the petition. Barbe v. City of Lake Charles, 216 La. 871, 45 So.2d 62.
See Annotations: 126 A.L.R. 1031; 27 A.L.R.2d 604; A.L.R. Supplemental Service Jan. 1961 at page 377 and Midyear 1961 at page 168; 82 C.J.S. Verbo “Statutes” § 123(h).
For the foregoing reasons the judgment of the District Court is affirmed.
Affirmed.