445 So.2d 88 (1984)
Pam Reeves HEYL, Plaintiff-Appellant,
v.
Cleveland George HEYL, Jr., as Administrator of the Succession of Cleveland George Heyl, III, a/k/a Cleve G. Heyl, III, Defendant-Appellee.
No. 15914-CA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1984.
Writ Denied March 16, 1984.
*89 Evans, Feist, Auer & Keene by J. Ransdell Keene and Frances O. Allen, Shreveport, for plaintiff-appellant.
Bethard & Davis by James G. Bethard, Coushatta, for defendant-appellee.
Before JASPER E. JONES, FRED W. JONES, Jr. and SEXTON, JJ.
JASPER E. JONES, Judge.
Plaintiff brought this action against the administrator of her deceased husband's estate seeking to have a matrimonial agreement establishing a separation of property regime between herself and decedent declared null and void. After a trial on the merits, the trial court found that plaintiff failed to carry her burden of proving grounds for the nullity of the agreement and rejected her demand. Plaintiff appeals. We affirm.
The plaintiff and decedent were married on April 10, 1976 and lived under the community property regime provided by law for over 3½ years. By a matrimonial agreement dated December 28, 1979 they changed to a separate property regime. The agreement was entered into without *90 judicial approval.[1] It was recorded in the conveyance records of Red River Parish January 28, 1980. Decedent died November 17, 1981. At the time of death plaintiff and decedent were physically separated. Plaintiff had instituted proceedings for a legal separation but a judgment of separation had not been granted.
The matrimonial agreement was signed by plaintiff, decedent, a notary and two witnesses. The facts surrounding the signing of the agreement are contested.
Plaintiff claims she was tricked into signing the agreement. She testified that she signed while she was employed at decedent's place of business, Cleve Heyl Chevrolet-Buick, in Coushatta. She stated that one day as she was working decedent brought to her desk a document which he claimed was a land deed and requested her signature. He said he was in a hurry because his attorney, who was in decedent's office, was waiting for the document. Plaintiff signed without looking at or reading the document. Plaintiff testified that later decedent told her he tricked her into signing a matrimonial agreement but he followed the advice of his attorney and tore it up. Plaintiff claims she believed him and thought no more of the matter until they separated. She specifically denies ever signing any document in the presence of the notary and witnesses whose signatures appear on the matrimonial agreement.
The notary on the matrimonial agreement is decedent's mother. She remembers both parties and both witnesses being before her at the time the agreement was signed and remembers each of them signing it at which time she signed as notary. She did not draft the document and she neither read it aloud to plaintiff nor explained its significance to her.
One witness, David Hanna, recalls signing the document. He does not remember who was present or the circumstances under which he signed. He does not deny that all other signatories were present when he signed or that he saw the parties sign the document.
The other witness, Antonio Quiros, recalls signing the agreement in the presence of plaintiff, decedent and David Hanna. He does not remember whether the notary was present but does not deny she could have been. Quiros remembers seeing plaintiff sign.
Plaintiff assigns as error the trial court's finding she did not carry her burden of proving grounds for the nullity of the agreement. She claims the testimony establishes 4 grounds for which the agreement should be declared null:
(1) Lack of consent;
(2) Improper form;
(3) Lesion; and
(4) Lack of consideration.
Lack of Consent
Consent legally given is a necessary element for a valid contract. La.C.C. 1779. Consent is not lawful when it is produced by error and fraud. La.C.C. 1819. Plaintiff contends her consent was unlawful because she was in error as to what she was signing and that error was induced by fraud on the part of decedent.
The two elements essential to establishing legal fraud are an intent to defraud or gain an unfair advantage and a resulting loss or damage. La.C.C. 1847; Walton v. Bufkin, 135 So.2d 309 (La. App.2d Cir.1961); In re Wingate, 184 So.2d *91 237 (La.App. 1st Cir.1966). A party alleging fraud has the burden of establishing it by more than a mere preponderance of the evidence. The conclusive proof required must be by clear and convincing legal evidence. La.C.C. 1848; Hall v. Arkansas-Lousiana Gas Co., 359 So.2d 255 (La.App.2d Cir.1978); Jackson v. Fontenot Building, Inc., 314 So.2d 516 (La.App. 1st Cir.1975); St. Mary v. St. Mary, 175 So.2d 893 (La.App.3d Cir.1965); Collier v. Administrator, Succession of Blevins, 136 So.2d 774 (La.App. 4th Cir.1962).
A party is presumed to know the contents of an instrument he signs. Mitchell v. Bertolla, 397 So.2d 56 (La.App.2d Cir.1981); Fontenot v. Coreil, 2 So.2d 97 (La.App. Orleans 1941). Signatures to contracts are not mere ornaments. If a party can read, it behooves him to examine an instrument before signing it. Snell v. Union Sawmill Co., 159 La. 604, 105 So. 728 (1925); State v. Harris, 138 So.2d 197 (La. App. 4th Cir.1962); St. Landry Loan Company v. Avie, 147 So.2d 725 (La.App.3d Cir.1962).
The evidence, as a whole, does not clearly and convincingly support plaintiff's allegation of fraud. The only evidence which supports the allegation is plaintiff's uncorroborated testimony that her deceased husband gave her the agreement to sign under the pretext it was a land deal. Plaintiff's story is controverted by the testimony of her own witness, Antonio Quiros. This witness is fully corroborated by the testimony of the notary. The testimony of Quiros and the notary contradicts plaintiff's story about the circumstances under which she signed the matrimonial agreement. The testimony of these witnesses is substantial evidence to support the trial judge's conclusion that plaintiff failed to establish that she was tricked into signing the agreement. The trial judge saw and heard the witnesses' testimony and was in the best position to determine credibility. He disbelieved the plaintiff's testimony that she didn't know that she was signing a matrimonial agreement. She is bound by what she signed.
Improper Form
Plaintiff contends the matrimonial agreement is invalid as to form because it was not made by authentic act or by an act under private signature duly acknowledged by the parties as required by La.C.C. 2331.[2] She first argues that none of the signatories to the agreement could consistently affirm that they signed in the presence of each other.
The requirements for an authentic act are contained in La.C.C. 2234, which provides:
"The authentic act, as relates to contracts, is that which has been executed before a notary public or other officer authorized to execute such functions, in presence of two witnesses, aged at least fourteen years, or of three witnesses, if a party be blind. If a party does not know how to sign, the notary must cause him to affix his mark to the instrument."
All 2234 requires is that the notary and witnesses be present when each contracting party signs the act and that the notary and witnesses also sign the act. They need not necessarily sign at the same time as the contracting parties. Rittiner v. Sinclair, 374 So.2d 680, 685 (La.App. 4th Cir.1978).
On its face, the matrimonial agreement appears to be a valid authentic act. Implicit in the trial court's holding that plaintiff failed to prove the nullity of the agreement is a finding that the requirements of C.C. 2234 were complied with. The record reasonably supports this finding. Reasonable inferences of fact should not be disturbed on appeal unless clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
*92 Plaintiff also argues the agreement is invalid as to form because the notary neither read nor explained it to her. She points to no authority supporting her contention. All of the formal requirements for an authentic act are contained in C.C. 2234. It only imposes signature requirements. The notary is not required to read or explain the act to the parties.
Lesion and Lack of Consideration
C.C. art. 2329 requires that the matrimonial agreement entered into after the marriage creating a separate property regime serve the best interest of the spouses. The plaintiff's contention that she received inadequate or no consideration in the matrimonial agreement constitutes a contention that it was invalid because it was not to her best interest.[3] A review of the evidence adduced at trial reveals that it was directed almost exclusively to the circumstances surrounding the execution of the matrimonial agreement. The evidence does not establish what property was received by plaintiff pursuant to the matrimonial agreement nor the value of it. The only property shown at trial to have been received by the decedent was an unidentified number of shares of stock in Cleve Heyl Chevrolet-Buick, Inc., which was declared to be his separate property in the matrimonial agreement. The value of this stock was not established. No other circumstances surrounding the existing nor prospective financial condition of the spouses at the time of the execution of the agreement was established at trial. The plaintiff, who has the burden of proof, totally failed to establish as a grounds for invalidating the matrimonial agreement that it was not to her best interest.
For the foregoing reasons the judgment of the trial court upholding the validity of the matrimonial agreement is AFFIRMED. All costs of this appeal are assessed to plaintiff.
NOTES
[1] The matrimonial agreement is dated after the passage of Act 709 by the legislature in 1979. Act 709 revised Louisiana's community property law. The general provisions of the act became effective January 1, 1980. Acts 1979, No. 709, § 13. Under the law before Act 709 a matrimonial agreement altering the legal regime could only be entered into before marriage. The parties could not alter the legal regime after marriage. See former La.C.C. 2329. Under the present law the parties can enter such an agreement after marriage with judicial approval. La. C.C. 2329. Because of the extensive changes in the law, Act 709 provided persons already married could, between August 1, 1979 and January 1, 1980, alter the legal regime without judicial approval. Acts 1979, No. 709, §§ 10 and 13.
[2] Because we find that plaintiff has failed to prove the agreement is not by authentic act, we find it unnecessary to consider whether it is valid as to form as an act under private signature.
[3] The matrimonial agreement contained a provision that all property acquired by the respective spouses during the marriage and prior to the agreement was to belong to their respective separate estates.